UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------
                                    :
MICHAEL DAVITT,                     :
                                    :          10 Civ. 2919 (FPS)
            Plaintiff,              :
                                    :   **MEMORANDUM OPINION AND ORDER**
v.                                  :   **GRANTING DEFENDANT'S MOTION**
                                    :      **FOR SUMMARY JUDGMENT**
ROCKLAND COUNTY DEPARTMENT          :
OF MENTAL HEALTH,                   :
                                    :
            Defendant.              :
                                    :
------------------------------

## I. Background

The now pro se[1] plaintiff[2] ("plaintiff" or "Mr. Davitt"), a former employee of the defendant ("defendant" or "Rockland County"), filed this civil action in this Court on April 5, 2010. The complaint alleged disability discrimination against Mr. Davitt's former employer, claiming that Rockland County discriminated against him due to his status as a recovering alcohol and drug user, as well as the defendant's perception that Mr. Davitt suffered from a mental or emotional disability, in violation

---

[1] "Pro se" describes a person who represents himself in a court proceeding without the assistance of a lawyer. Black's Law Dictionary 1341 (9th ed. 2009).

[2] Mr. Davitt was represented by counsel at the time that this civil action was filed in this Court. However, plaintiff's counsel later moved to withdraw as counsel for the plaintiff, which motion was granted by this Court. Following a brief stay of this case to allow the plaintiff time to obtain substitute counsel, this matter moved forward with the plaintiff proceeding pro se. The plaintiff, who claims that he has been unable to secure substitute counsel, remains pro se at the time of this memorandum opinion and order.

of both state and federal disability discrimination laws. The complaint arose from the following events.

The plaintiff began working for the Rockland County Department of Mental Health ("RCDMH") in June 1991 as a "mental health worker." He informed the defendant at the time of his hiring that he was a recovering alcohol and drug user. He worked for approximately two years in an inpatient psychiatric unit before transferring to the inpatient detoxification unit for approximately the next eight years. In 2000, the plaintiff was transferred back to the inpatient psychiatric unit, where he worked for approximately two years. During those two years, the plaintiff states that he was assaulted on multiple occasions. The plaintiff then obtained a certification as a substance abuse counselor and transferred into a position as a drug court case manager. He worked in this position for approximately 18 months before transferring to the methadone maintenance program, where he worked for approximately 18 months. The plaintiff then transferred to the Rockland County Day Hospital, working as a substance abuse counselor for approximately 18 to 24 months. He then transferred to general case management, continuing to work as a substance abuse counselor.

On February 20, 2008, Mr. Davitt was informed that a consumer had lodged a complaint against him alleging that the plaintiff had threatened to have the consumer's social security revoked. On

March 4, 2008, Mr. Davitt requested a meeting with his supervisor. At that meeting, he disputed the specifics of the complaint and told those present that he was fearful for his physical safety and mental and emotional well being should he be transferred to the inpatient psychiatric unit.  On March 5, 2008, Mr. Davitt was told that he was being transferred to the inpatient psychiatric unit. He also received a letter of reprimand.  Despite telling his supervisors that he had serious concerns about the transfer, the plaintiff was told to report to his new position.  On that same day, after receiving the reprimand and directive to report to the inpatient unit, the plaintiff went to the employee assistance unit and told them he required an accommodation.  The employee assistance unit advised the plaintiff to seek psychiatric assistance and gave him the names of several psychiatrists.

On March 6, 2008, Mr. Davitt called the defendant and stated that he was unable to report to the inpatient unit because of the same concerns he had previously expressed and because of the emotional trauma resulting from the alleged efforts of the defendant to retaliate and discriminate against him.  The plaintiff also notified the employee assistance program to advise them that he was unable to come to work.  On March 18, 2008, the plaintiff met with Helen Kukla, M.D., a psychiatrist.  Around that time, the plaintiff sent the defendant a letter stating that he is a protected person under the law and that the defendant's conduct

violated his rights.  The plaintiff received a letter about the same time indicating that if he did not supply, before the end of the month, a doctor's note explaining his absence, the defendant would treat his absence as a resignation and move to discontinue his medical insurance and that he would owe the defendant for medical benefits extended.  The plaintiff provided a written notice from Dr. Kukla before the end of the month.  Dr. Kukla verbally told the director of mental health personnel for the defendant that the plaintiff was not able to perform his duties in the inpatient unit because it would be too traumatic.  On April 1, 2008, the defendant notified the plaintiff in writing that he was being placed on involuntary unpaid leave of absence and that he would receive notice regarding an Article 72 hearing pursuant to New York Civil Service Law § 72.  The plaintiff states that he was not informed of his Article 72 hearing, which occurred on July 7, 2008. He states that he received a telephone call from a representative of the defendant, advising him that a hearing had begun and asking him whether he would attend.  The plaintiff then went to the hearing.  The hearing officer stated that the hearing was not being opened and that it was adjourned until August 8, 2008.  The plaintiff appeared at the next date, where testimony was given. The plaintiff appeared on the third and final date.  The hearing officer determined that the plaintiff was unable to perform the essential functions of his job.

4

The plaintiff states that in July 2008, he provided the defendant with documentation that he was able to return to work as long as it was not in the psychiatric unit.  On March 22, 2009, the plaintiff provided a letter from a physician indicating that he is in good physical and mental health and able to perform all of the duties of a substance abuse counselor.  On July 15, 2009, the plaintiff filed a complaint with the New York State Division of Human Rights asserting his claim of discrimination and retaliation.

After the plaintiff filed his complaint in this case, the defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the plaintiff failed to state a claim upon which relief could be granted.  This Court partially granted that motion and dismissed all of the claims in the plaintiff's complaint except for a claim that he was transferred to an inpatient unit because of a perceived psychological or emotional illness, in violation of the federal Americans with Disabilities Act of 1990 ("ADA").

Following the dismissal of all but one of the plaintiff's claims, the parties engaged in discovery over a number of months, and the parties then filed cross-motions for summary judgment which are now both fully briefed and ripe for disposition by this Court. For the reasons that follow, the defendant's motion for summary judgment will be granted, the plaintiff's motion for summary

judgment will be denied, and this civil action will be dismissed with prejudice.

## II.   Applicable Law

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is only appropriate when the moving party can show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Based upon this standard, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Id. at 256.  As such, "summary judgment is proper where there is 'nothing in the record to support plaintiff's allegations other than the plaintiff's own contradictory and incomplete testimony.'"  Rivera

6

v. Rochester Genesee Reg'l Transp. Auth., 702 F.3d 685, 693 (2d Cir. 2012) (quoting Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2011)).  Nonetheless, in reviewing the facts and evidence, a court must "constru[e] all evidence in the light most favorable to the non-movant and draw[] all reasonable inferences in that party's favor." McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009).

### III.  Discussion

In the plaintiff's single remaining claim, he alleges that he was transferred to an inpatient unit as a result of a mental or emotional disability from which the defendant believed that he suffered.  This transfer, the plaintiff claims, was thus violative of the ADA, which proscribes discrimination "against a qualified individual on the basis of a disability in regard to . . . other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  The proof of an ADA discrimination claim follows the burden-shifting framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). McBride, 583 F.3d at 96.  Accordingly, in order to successfully assert an ADA claim, the plaintiff must first "establish a prima facie case." Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006).  Then, and only if the plaintiff successfully establishes his prima facie case, the burden shifts to the defendant to "offer through the introduction of admissible evidence

a legitimate non-discriminatory reason ["LNDR"] for its action[s]." Id. Finally, if the defendant carries its burden of production to present an LNDR, the burden shifts back to the plaintiff to "produce evidence and carry the burden of persuasion that the proffered reason is a pretext" for discrimination.   Id.

ADA discrimination claims can take two forms.  First, a plaintiff can allege that an adverse action was taken against him as a result of his disability.  This claim is known as an "adverse action" claim.  The second type, a "failure to accommodate" claim reflects the fact that discrimination under the ADA includes failure by an employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  42 U.S.C. § 12112(b)(5)(A).  As such, this type of claim alleges that the plaintiff is a person otherwise qualified for a position, who was denied an available reasonable accommodation which would have allowed him to perform the essential functions of the position at issue.  It appears from the plaintiff's allegations that he has brought a claim under both of these theories.[3]

   A.   Prima facie case

In order to establish a prima facie case in an adverse action claim, the plaintiff must show the following:

_____

[3]Unfortunately, the plaintiff's filings since the time that his counsel withdrew from this case have been somewhat rambling, largely non-responsive, and exceedingly difficult to decipher.

> (1) [his] employer is subject to the ADA;
> (2) [he] was disabled within the meaning of the ADA;
> (3) [he] was otherwise qualified to perform the essential functions of [his] job, with or without reasonable accommodation; and
> (4) [he] suffered [an] adverse employment action because of [his] disability.

Cameron v. Cmty. Aid for Retarded Children, Inc., 335 F.3d 60, 63 (2d Cir. 2003).

A prima facie case for a failure to accommodate claim requires a showing that:

> "(1) [the] plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."

Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 184 (2d Cir. 2006) (internal citation and quotation marks omitted). Based upon the following, this Court finds that the plaintiff has failed to establish either of these prima facie cases.

Initially, this Court notes that the defendant does not contest that it is covered by the ADA, and this Court finds that it is covered. 42 U.S.C. § 12111(5)(A)-(B) ("The term "employer" means a person engaged in industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year . . ." Specific exceptions include only, "the United States, a corporation wholly owned by the government of the United States, or an Indian tribe; or a bona fide private membership club . . ."). Accordingly,

element one of the plaintiff's adverse action claim, and element two of the plaintiff's failure to accommodate claim are satisfied.[4]

However, this Court finds that the plaintiff has failed to present evidence sufficient to allow a reasonable fact-finder to conclude that he is or was at the time of his transfer, "a disabled person" as that term is defined by the ADA.   Under the ADA, individuals are considered "disabled" both if they actually suffer from "a physical or mental impairment that substantially limits one or more major life activities," or if they are "regarded as" suffering from such an impairment by their employer, even if they do not actually so suffer.   42 U.S.C. §§ 12102(1)(A)&(B); and see Jacques v. DiMarzio, Inc., 386 F.3d 192, 199 (2d Cir. 2004).   As to the claim remaining in this case, the plaintiff alleges not that he was actually "disabled," but that Rockland County regarded him suffering from mental or emotional disability.

Rockland County argues that Mr. Davitt has not created a genuine issue of material fact as to this element of his prima facie case because, at the time that he was transferred to the inpatient unit following the patient complaint that was filed against him, he was not regarded as disabled.   The defendant asserts that it did not learn of any supposed mental or emotional issues regarding the plaintiff's ability to work in the inpatient

---

[4]As the prima facie cases of both of these theories of liability differ only in the final element, this Court will examine both prima facie cases in a single discussion.

facility until after it reassigned him to that unit, and he refused to report for work there.  Accordingly, it could not have regarded him as disabled when it transferred him to the inpatient unit. Rockland County also argues that, even if it did perceive him as mentally or emotionally unable to handle working in the inpatient unit, this perception would not constitute perception of a "disability" under the ADA.  This Court agrees.

It is axiomatic that an employer cannot be said to perceive an employee as disabled if it did not possess the information necessary to make such a perception at the time that it made the decision or completed the act which precipitated the allegations of discrimination against it. See Young v. Westchester Cnty. Dep't of Soc. Servs., 57 F. App'x 492, 494 (2d. Cir. 2003).  The plaintiff in this case alleges that the defendant perceived him as suffering from a mental or emotional disability at all times throughout his employment.  He also alleges that he informed the defendant of the "physical and emotional toll" which the inpatient unit had on him, as well as his desire to continue his employment elsewhere within the RCDMH, prior to his reassignment to the inpatient unit. However, Mr. Davitt has offered no evidence to support a reasonable finding that the defendant ever perceived the Mr. Davitt as suffering from a mental or emotional disability prior to transferring him to the inpatient unit in 2008, let alone that that perception existed throughout his entire employment.   The

11

plaintiff's bare allegations in his complaint that he was perceived as disabled throughout his employment, along with his statement that he informed the defendant that he was at most uncomfortable and unhappy working in the inpatient unit, fail to support his claim.

The plaintiff had worked in the inpatient unit multiple times in the past and, based upon the affidavits of his superiors, had never failed to perform the essential functions of his job there. See ECF No. 65 *9.   Further, when the plaintiff applied to the RCDMH, he indicated that he did not suffer from any mental, emotional or nervous condition; and no evidence has been presented to show that the defendant ever sought mental or emotional health treatment during his employment with the RCDMH.   Only after he was transferred back to the inpatient unit and refused to report did he seek such treatment.   Affidavits of the plaintiff's superiors also indicate that the plaintiff had never had any difficulty performing any of the functions of any of his jobs prior to the time that he was transferred to the inpatient facility.   Finally, as Rockland County points out, the very fact that it assigned the plaintiff to the inpatient unit in 2008 shows it perceived him as able to perform all of the essential functions of that position at that time.

The plaintiff seems to offer, as evidence of the defendant's perception, an argument that an unknown person, who may or may not

12

have worked for Rockland County, told him that he was not able to go back to work, and that he may need to take anti-depressants. However, this does not provide evidence that the defendant transferred the plaintiff because of some perceived disability. First, this Court is unable to discern who made this statement to the plaintiff, and whether that person had any influence on decision-making at the RCDMH.  See Woodman v. WWOR-TV, Inc., 411 F.3d 69, 82-83 (2d Cir. 2005) (Plaintiff must present evidence to show that the decision maker was aware of her protected status). Second, it is clear the statement was made to the plaintiff after he refused to report to the inpatient unit after his transfer. Accordingly, the comment cannot serve as evidence of information possessed by the defendant at a time prior to the transfer.[5]  See Young, 57 F. App'x at 494.

Further, even if the defendant did regard Mr. Davitt as suffering from some mental or emotional infirmity which made him unfit to work as a substance abuse counselor in the inpatient unit, this Court can find no evidence to even suggest that this alleged infirmity would qualify as a "disability" under the ADA.  As noted above, in order to meet the definition of a "disability" under the

---

[5]The plaintiff also argues throughout his filings that the defendant knew of his status as a recovering alcoholic and drug addict when it transferred him to the inpatient unit, because he informed them of this fact at the time of his hiring.  This Court does not consider this argument, because the plaintiff's claims regarding his status as a recovering alcoholic and drug abuser have been previously dismissed by this Court.  See ECF No. 16.

statute, an impairment must "substantially limit[]" the plaintiff "in one or more major life activities."  29 C.F.R. § 1630.2(g).

Initially, this Court notes that the perceived mental or emotional disability claimed by the plaintiff is highly amorphous and undefined.  The plaintiff does not particularly describe this alleged disability, nor does he claim any particular major life activities which he believes the defendant perceived him to be substantially limited in performing.  The only descriptions that the plaintiff has offered of his claimed mental or emotional infirmity are the following: (1) the plaintiff alleges that <u>after</u> he was placed in the inpatient unit and refused to report, he was diagnosed as depressed and perhaps traumatized as a result of his previous time working there;[6] and (2) the plaintiff claims that he informed his superiors that he did not want to return to work in the inpatient unit due to previous traumatizing or otherwise negative experiences with consumers there.  Accordingly, it seems from the filings in this case, that the plaintiff alleges that the defendant perceived his mental or emotional infirmities to substantially limit him in the major life activity of working.

However, in order for an impairment to "substantially limit" a person's ability to work so as to qualify as a disability, it must "significantly restrict" that person's "ability to perform

---

[6]As noted above, the plaintiff reported being assaulted and otherwise attacked on more than one occasion during his previous time in the inpatient unit.

either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.   The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." EEOC Regulations § 902.4(c)(3). The United State Supreme Court in <u>Sutton v. United Air Lines</u>, 527 U.S. 471 (1999), stated the standard another way.   The Court in that case articulated that "[i]f jobs utilizing an individual's skills . . . are available, one is not precluded from a substantial class of jobs.   Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs." <u>Id.</u> at 492.   It is also necessary that an impairment be perceived as substantially limiting the plaintiff's ability to perform a broad range of jobs for an extended or permanent period of time. <u>Req'l Econ. Cmty Action Program v. City of Middletown</u>, 294 F.3d 35, 47 (2d Cir. 2002).

In this case, the plaintiff alleges that he was regarded as suffering from a mental or emotional disability that precluded him from working in the inpatient unit because he suffered from anxiety and residual trauma as a result of his previous working experiences there.   The plaintiff admits throughout his filings in this case that he was willing and able to perform the functions of a substance abuse counselor at RCDMH, but that he simply could not return to the inpatient unit due to residual stress and fear

resulting from his previous assignments there.  In fact, the record shows that both Mr. Davitt and his psychiatrist directly communicated to the defendant that Mr. Davitt was able to return to work as a substance abuse counselor anywhere but in the inpatient unit.  As such, this claimed impairment cannot serve as a "disability" under the ADA because the plaintiff admits that his claimed impairment only restricts his ability to perform one position -- that of a counselor within the inpatient unit.

A number of cases wherein plaintiffs claimed similar mental or emotional issues resulting from their particular employment situation are informative here.  In Price v. Mount Sinai Hosp., 458 F. App'x 49, 51-52 (2d Cir. 2012), the Second Circuit found that a plaintiff claiming a strikingly similar impairment had failed to show disability under the ADA because, her medical symptoms resulting from workplace stress and depression only limited her ability to perform the job which she currently held, rather than a broad class of jobs.  In Mescall v. Marra, 49 F. Supp. 2d 365, 373 (S.D.N.Y. 1999), another court in this district rejected a plaintiff's claim that her depression, panic attacks and dermatological symptoms associated with, among other things, confrontations with a superior, constituted an ADA disability. That Court reasoned that an inability to work under a certain supervisor did not quality as a disability under the ADA because the plaintiff could work in the same position at another location.

16

<u>Id.</u>; <u>see also</u> <u>Siemon v. AT&T Corp.</u>, 117 F.3d 1173, 1174-1176 (10th Cir. 1997) (Severe depression and anxiety resulting from workplace conflict does not qualify as a disability under the ADA); <u>Wallner v. MHV Sonics, Inc.</u>, 2011 U.S. Dist. LEXIS 128086, 14-16 (M.D. Fla. 2011) (Plaintiffs, who argued that they were disabled as a result of their fear of working the night shift due to prior overnight robberies constituted a disability that precluded them from working night shift, failed to qualify as disabled because this fear did not amount to anything more than a transitory or minor impairment).

This Court also finds that the plaintiff's anxiety and depression related to his prior experiences in the inpatient unit, whether perceived by the defendant or not, fail to qualify as disabilities as that term is defined by the ADA.  At most, these mental or emotional difficulties precluded the plaintiff from working in that unit only, not from working in a broad range of positions.  Accordingly, he has failed to create a genuine issue of material fact to support his prima facie case, and summary judgment must be granted to the defendant.

    B.   <u>Legitimate non-discriminatory reason and pretext</u>

This Court also finds that even if Mr. Davitt had raised a genuine issue of material fact as to his prima facie case, his claim would nonetheless fail because he has offered nothing to rebut the defendant's LNDR.  The defendant claims that the plaintiff was transferred because his services were needed in the

inpatient unit as a result of a restructuring of the department. In support of this LNDR, the plaintiff's former supervisors submitted affidavits which indicate that the RCDMH had been restructured in order to save costs, and plaintiff was reassigned to the inpatient unit because that unit had a need for a substance abuse counselor.  <u>See</u> ECF Nos. 65 & 66.  Further, the supervisors state that they believed that the plaintiff was a good candidate to fill the need for a substance abuse counselor in the inpatient unit because the plaintiff had prior success in the inpatient unit, but had recently had a complaint lodged against him in his current unit.  <u>Id.</u>  As a result, they say that it was clear to them that his counseling approach was better suited for the inpatient unit. <u>Id.</u>  As the defendant's burden at the LNDR stage is simply one of production, this claim supported by affidavits is sufficient to satisfy Rockland County's burden and require the plaintiff to present evidence of pretext.

The plaintiff has failed to even respond to the defendant's main claimed LNDR, that Mr. Davitt was transferred due to restructuring of the department and a need for substance abuse counselors in the inpatient unit.  In his response to the defendant's disclosures of material facts as to which there can be no dispute,[7] the plaintiff states a number of times that he had no disciplinary record, and there were no prior issues with consumers

---

[7]Filed pursuant to Local Rule 56.1.

before the complaint immediately prior to his transfer.  ECF No. 72.  He also seems to assert that the consumer complaint was either incorrect or that he was not given adequate opportunity to respond to it.  Id.  However, the defendant makes no argument that the plaintiff was transferred as any punitive measure resulting from the consumer complaint.  Rather, the defendant claims that the plaintiff was transferred because of a need in the inpatient unit, and because the consumer complaint coupled with Mr. Davitt's prior success in the inpatient unit showed that he was well suited to fill that need.  Further, even if the consumer complaint was the reason for the plaintiff's transfer, and that complaint had been improperly handled in some way, that in no way connects it to any perceived disability of the plaintiff.  The plaintiff's arguments assert only that the consumer complaint may have been mishandled, not that the complaint was fabricated by the defendant or used as some sort of pretext for discrimination.  Simply because the plaintiff disagrees with the defendant's handling of the complaint, does not lead to an inference that the transfer was discriminatory.  See Brown v. Time, Inc., No. 95 Civ. 10081, 1997 U.S. Dist. LEXIS 6227, at *38 (S.D.N.Y. May 5, 1997) ("An employer is permitted to make bad business judgments and misjudge the work of employees as long as its evaluations and decisions are nondiscriminatory.").

Finally, it seems that the plaintiff himself does not even argue that he was transferred because of a perceived disability.

He argues throughout his response to the defendant's Rule 56.1 filing that the transfer was "harassment" and was somehow connected to denied overtime and time sheets that the plaintiff was instructed to erroneously file to avoid overtime pay. ECF No. 72. This case is a claim for disability discrimination only, and any improper handling of overtime or retaliation and harassment resulting therefrom is irrelevant. As such, the plaintiff has also failed to rebut the defendant's LNDR.

C.   <u>The plaintiff's motion for summary judgment</u>

The plaintiff's motion for summary judgment, along with his filings related to the defendant's motion for summary judgment largely argue procedural defaults on the part of the defendant and assert that this Court has failed to protect his rights by refusing to enforce discovery and other requirements. This Court does not address the plaintiff's claims of procedural default and wrongdoing by the defendant, because the plaintiff has presented no evidence to support the same, and has not shown any way in which he has been prejudiced by any of these alleged defaults or improper conduct.

## IV.   <u>Conclusion</u>

For the reasons stated above, the defendant's motion for summary judgment is GRANTED. The plaintiff's motion for summary judgment is DENIED. It is thus ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

Should the plaintiff choose to appeal the judgment of this Court to the United States Court of Appeals for the Second Circuit, he is ADVISED that he must file a notice of appeal with the Clerk of this Court within 30 days after the date of the entry of the judgment order.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the plaintiff and to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:   March 14, 2013


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE
SITTING BY DESIGNATION